Good morning, Your Honors. My name is James Kemp. May it please the Court, I represent the appellant, Mary Kwiatkowski, in this matter. She is also known, sometimes referred to in the record, by her nickname of Suzy. In this case, summary judgment was, in our view, improperly granted because the defendant failed to satisfy its burden under the Federal Rules of Civil Procedure, 56C, to bring forth and produce its required showing that there was no disputed facts, there was no genuine issue of material fact that was in dispute. Counsel, even before we get to the merits, do you think that the Federal court had subject matter jurisdiction? That is something that I did raise. I think that under the removal statute, and that's section 1447C, that during the course of the proceedings, because the employer that Mary had gone to work for sold off its body shop and essentially ceased operations, I think that she would have, and that was about 10 months after she was fired, she was making about $65,000 a year. So her damages would have potentially been less than that. But don't we have to look at whether subject matter jurisdiction existed at the time of the filing and the removal and the subsequent events don't matter? Well, the removal statute, Your Honor, section 1447C, says that if at any time before final judgment it appears that to the district court that it lacks jurisdiction of the subject matter, that the district court shall remand the case to the State court from where it came. So if the case is – obviously, there's been this final judgment at the time. But what about – let's assume that we do look at the jurisdictional issue at the beginning of the case. Do you think that the $75,000 threshold was sufficiently shown or met for the court to have jurisdiction? At the outset, when the case was filed, yes, it would have been, because she would have expected to continue to work there. At that point, she expected to work there for many years, and at $65,000 a year, she would have expected to – it would have been met at that point in time. The question is whether or not, subsequent to that, the subject matter appears to be lacking. What kind of punitive damages were you seeking? We did not specify any specific amount of punitive damages. In Nevada, it can be awarded and it's – there's a limit of $300,000 for any cases where the actual damages are below $100,000, and then three times the actual damages if the damages are over $100,000, the actual damages. So it would be completely up to a jury. The judge – in this case, it was Judge Sandoval who initially said that punitive damages would be available because of the intentional nature of her tort claims. But it would have been up to $300,000? Potentially, it could have been. That's true. But you – on the face of the complaint, the only amount that I saw was one $10,000 figure. It wasn't $10,000 for each of the causes of action, just a $10,000 punitive damages and a reasonable attorney's fee. Do you think that meets the standard? No, I would – but because of the pleading rules in State court, that's all you're allowed to say, damages in excess of $10,000. You're not allowed to say specific – if you have special damages that you're pleading, you can say exactly what those are. For example, if there are medical expenses, you can put the special damages in the complaint. But otherwise, in the prayer, you're not supposed to say anything other than in excess of $10,000. That's why it appears that way, because the case did start in State court. Well, counsel, a little puzzle. Do you want to stay in Federal court or would you rather go back to State court? I would prefer to go back to State court, Your Honor. Well, you certainly had a great case to deny – to urge remand to the State court on a failure of diversity. I don't understand your argument. If you want to stay in Federal court, you have to establish Federal court jurisdiction. Well, yes, and because it was removed, it was the defendant's responsibility as a ruling party to establish that. I would prefer to go back to State court. This is something that occurred to me rather late in the procedure once the employer went out of business, and we discovered that in discovery, that she would no longer have been working there essentially after. So you're stipulating the case is worth less than $75,000, and you'll ask for less if you go back to State court? It's potentially less than that. We may not be given punitive damages. I mean, the potential is there for punitive damages. Are you going to be asking for less than $75,000? May the record reflect a deep breath. No. At this point, that's something I would probably have to confer with my client over. That would be, I think that she should get more than $75,000. I'll tell you that. I appreciate your candor. I do. Okay. So with the bearance of this. Well, what about the second issue, the Nevada wrongful termination claim? Is it, does it give a private right of action or not? The NRS 613.200, our argument there is that the statute obviously is intended to protect employees from being blacklisted, from being prevented from getting future employment by their former employer. As long as the State brings the claim. But this is a private claim. Correct. What is there in the statute which establishes a private right of action? Our argument is that it is implied through the use of the language, in addition to any other remedy, the State can impose penalties. And specifically, it has administrative fines and criminal penalties for misdemeanor. But it talks about in addition to any other remedy. And our belief is that that implies that a person who's harmed by this should be entitled to have a remedy. Otherwise, the only remedy is that the employer can be charged with a crime and have to pay the State $5,000. You know, the fines involved. It does nothing to make whole the person who's actually been injured. And I believe that under the Court v. Ash Standard, which has been adopted by the Nevada Supreme Court, that this is an individual who is intended to be especially protected by the statute. It is consistent with the intent of the legislative scheme of employee protection under Chapter 613 of the statutes. And that it is implied within the language of the statute itself that there should be this private right of action. Of course, it does also support the tort liability under the common law claims of intentional infliction of, I'm sorry, intentional interference with prospective economic advantage and intentional interference with contract, because this is a statute that prohibits the type of interference that took place here. And therefore, we believe that statute does also dovetail and support the common law causes of action. Kagan, so looking at your causes of action, what admissible evidence is in the record that was before the trial court that Hartford and Mr. Durez demanded or required that people's fire miss the plaintiff or the appellant? All we have is that affidavit that appears to me to be hearsay. I spoke with Defendant Durez. David Walker told me that. I mean, we don't have anything that isn't hearsay or double hearsay. Well, and I understand the point. The form of the evidence right now is in hearsay. But David Walker did testify. He did give a deposition. If I had this to do over again, I would have done it differently and I would have gone straight to his deposition. But the trial court didn't have the deposition. And you only pointed that out, I believe, in your reply brief. Right. Well, and I understand that. And that goes back to my what I was talking about initially. The defendants, in their statement under Local Rule 56-1, the only thing that they ever raise is an issue of whether or not she was an at-will employee and how that might legally impact the claims involved. They never raised it. There are 14 paragraphs. It's in the Excerpts of Record, Volume 3, 14 paragraphs, and 6, 7, 8, 9, and 10 where it talks about the fact that she got fired on her second day. It doesn't address at all any of the facts surrounding her being fired. So they did not meet their burden to put that into dispute or to put that into say that there was no disputed fact, which would have, you know, caused us to have to bring forth all of the admissible evidence. And I would point out the case specifically that I've been looking at is Nissan Fire v. Fritz, which is 210 Federal 3rd, 1099. It's a 2009 circuit case. It says specifically, you know, at summary judgment, if the moving party does not meet its burden of production and persuasion to show that there is no disputed fact, they have to negate that there is either evidence negating that there is an essential element of the claim or defense or to show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If they don't ---- Kagan. Are you saying that because Hartford did not challenge the hearsay nature of the evidence you produced that we then could consider it? Well, I believe that because what happened is they didn't raise any of the issues. They weren't they didn't say that it was not disputed that she had been terminated for this extortionate reason by the other other that Peoples had been told, fire her by the end of the day on February 12th, have her off your property, or we're going to pull 15 percent of your monthly revenue away from you. Didn't they point, didn't they dispute it with some deposition testimony of Mr. Walker? Mr. Walker is, was the manager of Peoples. Of Mr. Dezarez, rather. Mr. Derez, all he does in his deposition is deny that he ever said it. However, because of the interplay of Local Rule 56-1 that says you have to give a statement of undisputed facts, they never raised it there. They didn't follow the rule that would have triggered our responsibility to meet that. And under the Nissan Fire case that I've just cited, if they don't meet that burden, we don't have to ---- Kagan. Did they raise the issue that your evidence was hearsay? Only on their reply brief. To the district court. Yes. Only on their reply brief to the district court. And then that was the district court considered the hearsay, that it was hearsay, right? At that point, of course. By that point, I didn't have an opportunity to rebut that because of the nature of moving party, you know, opposition reply. Did you move for reconsideration or to reopen or anything like that? No. We appealed. Where's this Nissan case in your brief? I can't find it. It's not cited in my brief. I do cite in the reply brief other cases, but this one ---- You don't cite Nissan anywhere? Not in the briefs, Your Honor. Did you tell the other side you were going to cite a case today that you didn't tell her about? No, Your Honor. I didn't. I'm sorry. Not the best way to do it. I'm sorry. Counsel, before you leave the courtroom today, get the deputy clerk to give you the forms that you should use to serve the opposing counsel and the three judges of this court with the precise citation that you want us to look at. Very well, Your Honor. I will do that. There's also a rule called 28J where you can bring those things to our attention before argument. My apologies, Your Honor. It's my inexperience. I apologize about that. I have about a minute and a half left, if I can reserve that. Yes, you certainly may, counsel. Okay, thank you. May it please the Court. Heidi Stern on behalf of Hartford Fire Insurance Company and Robert Durez. Given the governing law in Nevada on these issues brought by plaintiffs and the lack of evidence, I believe that the district court's hands were tied. It really had to order summary judgment under the law and the facts presented to it. Counsel, do you think that there is subject matter jurisdiction based on the face of the complaint and the removal petition, which only alleges one amount, $10,000, but not for each claim, and then attorneys' fees and punitive damages in no amount? Does that meet the subject matter requirement? Yes, I do. And I'll just second what plaintiff's counsel said about the pleading rules in Nevada. Even a claim worth, you know, a billion dollars would be pleaded this way. But that's in the prayer, but there's nothing in the body that mentions any figure. And the fact that the Nevada state pleading rules might restrict amounts, that can't change a subject, the $75,000 requirement, can it? Sure. No, absolutely not. But I would also base my answer to you on the course of proceedings in this case, how much she claimed she was being paid at People's, and as well as her emotional distress damages. And just the conversations and the pleadings that we've had over the course of this case make it very clear that she is seeking in excess of $75,000, particularly with punitives added in. Aren't you supposed to measure it at the moment the complaint is filed? Yes. Subsequent stuff doesn't make any difference one way or the other, does it? Yes. I'm sorry, the last part of your question? So things that happen after that don't make any difference one way or the other? They shouldn't. That's right. It should be at the time. And I believe even on the face of the complaint, we saw this complaint and saw because of the punitives, because of emotional distress, because of lost wages, compensatories, we saw that this was going to be a claim in excess of $75,000. And Plaintiff, in all fairness, never brought this up, never moved to revand. It doesn't matter. I've heard about it up here. We still have to think about it, don't we? Absolutely. And isn't it correct that since the $75,000 amount does not appear anywhere on the face of the removal petition or the complaint, that it was then your burden to put evidence in the record of the amount in excess? And that simply isn't there, is there? Where in the record does it show? I believe we just had to put a statement to that effect in our petition for removal. I don't believe we have to include evidence. Just a conclusory? I think that that is sufficient. Just a conclusory, this is $75,000 and there has to be. And that is enough to invoke subject matter jurisdiction? Based on the claims that were alleged, yes. That's enough for us to remove the case and then plaintiff would need to come back and say, no, actually, it's going to be below that. So that's, so you file a document in pursuit of removal. It says in excess of $75,000. That's enough? I believe so, yes. The face of the complaint is $75,000. I believe so. And we attach the complaint to that petition. You believe so. I believe a lot of things that helped me, too, that turned out to be not true. Is there any way?   And I think that, just because we're going to have to remove the case, and in my understanding, having done this many times and removed cases from State court to Federal Court, that it, that that has been acceptable. For any case that says that's enough and that that can be considered in the trial. I have not looked into that, Your Honor, just to be honest with you, on the top of my head. I don't know. You're always honest with us even when you don't say it. I try to be. Now, it's on looking at the removal petition, and all you do is cite 1332, and there's nothing in 1332 that provides the bootstrap that you're asking for here. You do say it is defendant's position, your position, that it is facially apparent from the complaint the amount of controversy exceeds $75,000, exclusive of interest and costs, citing 1332. But all I see in the complaint is that the claim is for greater than $10,000, and that doesn't do it. Well, the facts alleged in the complaint do get us there. But that's the case. He doesn't state that, but the facts alleged, the lost wages, the punitive damages, the excess, you know, the excessive emotional distress, those facts alleged do get us there. Isn't there a requirement that it be facially apparent that more than $75,000 is in controversy, and if not, it's up to you to prove by a preponderance of the evidence that the jurisdictional threshold is met? And yet, as Judge Scanlon pointed out, that wasn't done. There's nothing in the record where you say, look at this, look at this, look at that. You just refer to the statute, which doesn't give you the report. And to the complaint, not just the statute, but to the complaint, which – and, Your Honor, I understand that, yes, we have to look at this case as of the time that it was filed, as far as removal being appropriate. But at the same time, in this case, there really is no harm, no foul. This case, ultimately, it really has proven to be, not only facially, but also over the course of the case. When I hear no harm, no foul, in the context of jurisdiction, I reject it out of hand. I understand. You have to meet the requirements to establish jurisdiction. And I gather the trial judge in this case never got into that question. It was never briefed, Your Honor. He considered it when the petition for removal was filed, certainly, as to whether to – Did he make any findings? No. Not that I'm aware of. Not that I'm aware of. So I would just rest on the face of the complaint and what we stated in our removal petition, the citation of diversity, with regard to that. There weren't – there weren't specific findings. Why don't you go to the merits, assuming we will get there. Okay. Thank you, Your Honor. As I was saying before, with regard to the claims that Plaintiff brought in this case, given the law, the state of the law in Nevada, and the factual record before the district court, it really had no choice but to grant summary judgment here. Now, when we filed our summary judgment motion, we were not attacking or even raising the element of intentional interference claims dealing with the interference itself. That's why we didn't raise any sort of issues, factual issues, with regard to But we were really focusing on the first element of those claims, which is, is there – is this a contractual relationship under the law in Nevada? Didn't you focus – did you focus at all on the fact that the affidavit was an admissible hearsay? Yes. In our reply, we noted that that was not admissible evidence. Well, wouldn't that have taken care of all the claims, the fact that there was no admissible evidence showing that peoples that had been told to fire her, wouldn't that have taken care of all of it? Yeah, basically, yeah. The district court, I think, made a few alternative rulings. It made rulings both under the law as well as under the lack of evidence. And so when Plaintiff says that we had some sort of duty to bring forward issues about the interference, we would say no, because our summary judgment motion was really based on the idea of whether this was a contractual relationship that could be interfered with in Nevada. And if you look at Nevada cases, you have, first, with regard to the tortious interference with the contractual relationship, you have a number of cases in Nevada that make it pretty plain that an at-will employment relationship, even though in DICTA the court has said, you In later cases, it's made it clear that with regard to termination rights, it's not contractual. You have that in Baldonado. You have that in the Martin case where the court specifically says that breach of contract is not applicable to an at-will termination situation. And so the district court was bound by those and also cited the Ollam case, I believe, which found the same thing. Counsel, are you conceding a private right of action exists here? Absolutely not. NRS 613-200, from its very inception up until the current, most current amendments to it, is not a statute that was ever intended to be anything other than criminal and administrative. So it starts out as part of the Crimes and Punishments Act in 1911. It continues from there. There are no cases even showing any sort of legal court action. But many, much of the legislative history does demonstrate administrative actions and administrative enforcement. And then you come to 2003, where the statute was amended to provide for any other remedies at the request of the labor commissioner to aid in enforcement. Then you look at the surrounding statutes in NRS 613, and you note that all of those are also criminal and administrative statutes. It fits right in there. Well, now, what is the Baldonado opinion telling us about this? It's not on 613-200 precisely, but what do we know? NRS 608, I'm assuming you're referring to that. Baldonado deals with NRS 608. 608 is, first of all, it's quite a different section. NRS 608 talks about sex discrimination, for example. And I wrote down some others that I don't remember. Does Baldonado support your position? Yes. Oh, yes. As far as statutory interpretation, absolutely. But NRS 608 talks about overtime pay. It contemplates suits for wages not paid. And so when plaintiff refers to NRS 608 having potential private rights of action, that may be the case that you can sue and get your wages paid to you that weren't paid to you. But it doesn't affect at all NRS 613, which is dealing with a fundamentally different employment type of issue. Going back to the about and controversy again this afternoon, in your papers, in your notice of removal, you say that in cases where the jurisdictional amount is not alleged, as here, the amount in controversy can nevertheless be ascertained when it is, quote, facially apparent from the complaint. Then you cite a case, Singer v. State Farm Mutual, 116, Fed Third, 373. Then you say Nevada, 1997. Is that a Ninth Circuit case, Singer v. State Farm Mutual? I am not sure off the top of my head, Your Honor. What does Singer say? How does Singer say we go about ascertaining it from the face of the complaint where the amount in controversy is not alleged? I believe it simply says that you look at the facts that are alleged and the types of claims, including punitives, for example. And then kind of like, because this is Nevada, people know what all this means and reasonable lawyers can ascertain what this is all about? Unfortunately, that does occur in Nevada sometimes. It probably should be more clear. But, yes, essentially you look at the face of the complaint. If you see a big claim for lost wages, if you see a claim for punitive damages in particular, you see medical expenses, you see emotional distress. Well, go get a copy of Singer and see exactly what it says. Yes. I'm sorry that I can't be more specific, Your Honor. And going there again, don't the cases say that if it isn't facially apparent, it isn't apparent from the face of the complaint, that the removing party may rely on facts in the removal petition, which I don't think you have here, and summary judgment-type evidence relevant to the amount in controversy at the time of removal. Yet I don't see anything in the record that says punitives probably in this amount, her wages in this amount. Is there anything in the record that you rely on other than just look at the complaint that would meet the $75,000 threshold? Not that we relied on that early on in our petition for removal. However, I will say this. Yes, it's true what you're saying. We could attach evidence, for example. The example I'm thinking is probably most prominent right now is when you have one of the mortgage lawsuits and the person doesn't say how much their house is worth or the loan is, well, you can easily find out that information and attach that, you know, the amount of the loan. So it shows that it's over $75,000. In a case like this, the defendant is not in a very good position to have the type of evidence that you're looking for. We really are constrained by the face of the complaint the same way that the court is. We don't have that standard. No, but you're the one that removed it to Federal court. Yes. And it's your obligation to establish jurisdiction in the Federal court. Now, I have Singer in front of me, and it seems to me that you're reading a lot more into Singer than I can see there. Facially on the complaint in Singer, there was an allegation in count one that State Farm breached a contract to pay $30,000. Count two specifically adds an additional $30,000, causing tort damages in addition to the original $30,000.  So on the face of the complaint, it shows $60,000 against the $50,000 threshold. Here, all I see is $10,000 on a threshold of $75,000. I think that made the decision in Singer perhaps easier, but it is not necessary. We would contend it is not necessary. When you see a complaint like we have here with, particularly with punitive damages, plus emotional, you know, distress, that's sufficient, even though it doesn't meet Singer's standard. Do you agree that if you lost, you might be liable for up to $300,000 punitives by statute? Yes. Yeah. You don't want to lose this case. I don't. I wouldn't mind having the Nevada Supreme Court decide some of these issues just for my own benefit, but I think they've clearly indicated where they're going with these types of claims. Well, Mr. Kemp will make it easy for you to go back to state court. He'd be just happy with that. I would not concede that. But I really do think in this case, the district court needs to be affirmed based on what it was faced with, with the law and the evidence. It had no choice. It absolutely made the right decision. And yes, we absolutely would be liable for more than $75,000, even if it did go back to state court. Thank you, counsel. Your time has expired. Mr. Kemp, you have some reserve time. Yes. Your Honors, again, there was a little bit of harm and foul in this case with respect to the district court having this, because there was on page 7 of the district court's decision on summary judgment, there was a footnote where the district court refused basically to do what's required. And under Erie, determined what the highest court of the state would decide with respect to the legal requirements of an intentional interference with prospective economic advantage or an intentional interference with contractual relations case. We've cited cases and the restatement from all over the country that hold that some of them hold that employment at will contract is sufficient to be a contract with which a third party cannot interfere. The cases in Texas that we cite are particularly strong on that point. And also other states that say, no, like the restatement section 766B, this is more of an intentional interference with prospective economic advantage type of case. Chapter 608 and Chapter 613 are related because the labor commissioner in Nevada enforces both of those. So that's why they're kind of related. 608.195 makes criminal. How do you read Baldonado? Baldonado was actually my case. And it had to do with the TIP sharing provisions under NRS 608.160. And there was, as part of it, we were claiming that there was a contract established by the. I guess what I'm saying is that Ms. Stern says that Baldonado supports her position. How do you read Baldonado? I don't think Baldonado impacts on this at all because it's not a termination case. It's not a case where a third party interfered with the employment, and particularly a former employer interfered with the employment of one of its former employees tortuously. See, I'm out of time. Very well. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: Campbell, O'scannlain, Trott